**Ronnie COLE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00183–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted May 30, 2006.

Decided July 21, 2006.

Rehearing Overruled Aug. 16, 2006.

Rick C. Shumaker, Texarkana, for appellant.

Adam O. Fellows, Asst. Dist. Atty., Texarkana, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The search warrant and its underlying probable-cause affidavit, used to justify a search for, and seizure of, cocaine in the possession of Ronnie Cole, Jr.,[1] are both independently signed and dated by Justice of the Peace Gibson "Hoot" Hadaway on a separate page attached to the main body of the respective document. But in each case, the separate signature page is in the form of a magistrate's verification of another's signature; obviously, language intended to be attached only to the affidavit, not to the warrant itself. In the trial court, Cole unsuccessfully sought to suppress the use of cocaine as evidence, evidence which is obviously key in Cole's conviction. The sole issue on Cole's appeal is whether the search warrant is valid in light of the signature requirements of Article 18.04(4) of the Texas Code of Criminal Procedure. We affirm the trial court's judgment because, regardless of the questionable language preceding the magistrate's separate signature on the warrant, the good-faith exception applies here to uphold the trial court's decision to admit the seized evidence.

■ At a hearing on a motion to suppress, the trial court is the sole trier of fact and evaluates witness testimony and credibility. *Estrada v. State,* 154 S.W.3d 604, 607 (Tex.Crim.App.2005). When reviewing a trial court's denial of a motion to suppress, we employ a bifurcated standard of review. *Id.* We afford great deference to the trial court's determination of historical facts and application of law to fact questions, which turn on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We review de novo the trial court's rulings on mixed questions of fact and law when those questions do not center on an evaluation of credibility and demeanor. *Id.* In the absence of explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Estrada,* 154 S.W.3d at 607. We will uphold the trial court's ruling on a motion to suppress if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

The Texas Code of Criminal Procedure sets out specific requirements with which a valid search warrant must comply. *See* TEX.CODE CRIM. PROC. ANN. art. 18.04 (Vernon 2005). The requirement at issue here is that the search warrant be signed and dated by a magistrate. *See* TEX.CODE CRIM. PROC. ANN. art. 18.04(4); *Gish v. State,* 606 S.W.2d 883, 885 (Tex.Crim.App. 1980).

---

1. With the admission into evidence of the cocaine seized through the authority of the warrant, Cole was convicted of possession of cocaine and sentenced to fifty years' imprisonment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2003).

Cole's contention centers on the use of the same signature form attached to both the affidavit and the search warrant. The clerk's record demonstrates that the two pages bearing the magistrate's signature are identical, except for the actual signatures and the dates added by hand to those pages. That was confirmed by the testimony of Coy Murray, the police officer who swore to and signed the probable-cause affidavit. The signature and date on the search warrant's signature page are not merely photocopied from the signature page of the affidavit, though the rest of the page appears to be simply a duplicate of the unsigned and undated signature page attached to the affidavit. So, while the same form was used—and doing so added incongruous language to the search warrant—we clearly have two magistrate signatures and dates.

Because the signature page on the search warrant uses the same language as the one found on the affidavit in support of the search warrant, Cole argues that Hadaway signed both documents only in his capacity as an officer authorized to administer oaths and that, therefore, the search warrant was not signed and dated by a magistrate as required by Article 18.04, meaning that no valid warrant supported the search and seizure by which officers obtained the cocaine.

In support of his position, Cole relies exclusively on *Miller v. State,* 703 S.W.2d 352 (Tex.App.-Corpus Christi 1985, pet. ref'd). The affidavit in support of the search warrant against Miller was on one side of a single piece of paper, on the reverse side of which was the search warrant which bore no signature. *See id.* at 353. The appellate court concluded the magistrate signed the affidavit in "his capacity as an officer ... authorized to administer an oath, not for the purpose of signing a search warrant." *Id.* That sin-

gle signature on the affidavit was not deemed a compliance with the warrant signature requirements of Article 18.04. *See id.*

We find *Miller* distinguishable in that, in *Miller,* the search warrant was not signed at all—the only signature appeared on the supporting affidavit on the opposite side of the page. Here, the affidavit bears the magistrate's signature as an official authorized to administer an oath, and the search warrant bears a separately written date and signature by the magistrate, albeit on the same form as was used for the signature on the affidavit.

Murray, who prepared the affidavit and search warrant, concedes that the same forms were used in connection with both documents. Nevertheless, Article 18.04(4) requires only that the search warrant be signed and dated by a magistrate. *See* Tex.Code Crim. Proc. Ann. 18.04(4); *Gish,* 606 S.W.2d at 885. The only signature in *Miller* appeared on the side of the paper bearing the affidavit. *See Miller,* 703 S.W.2d at 353. The *Miller* court determined that the single signature could not serve a dual purpose. *See id.* Here, the record shows that, in apparent compliance with a literal application of the language of Article 18.04, Hadaway did, in fact, sign and date the warrant. In *Miller,* such was not the case.

Notwithstanding this literal application of Article 18.04, there remains the problem of that incongruous language which precedes Hadaway's signature attached to the warrant. As Cole suggests, the language on that form literally indicates that Hadaway signed the warrant for the purpose of administering an oath, a nonsensical result since there was no other signature to verify on the warrant. But whether this verification language necessarily limits the magistrate's signature and, thus, invalidates the warrant because of its resulting failure to comply with Article 18.04's signa-

ture requirement is an issue we need not decide here.

Evidence, which otherwise should be excluded as being obtained in violation of some legal requirement,[2] should be admitted if "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX.CODE CRIM. PROC. ANN. 38.23(b) (Vernon 2005); *see Curry v. State*, 808 S.W.2d 481, 482 (Tex.Crim.App.1991).

■ We hold that Article 38.23(b)'s good-faith exception applies to this instance of arguable noncompliance with Article 18.04. In this holding, we are guided principally by *Dunn v. State*, 951 S.W.2d 478, 479 (Tex.Crim.App.1997). *See Miller*, 703 S.W.2d at 354.

In *Dunn*, the magistrate had been presented with twenty pages of related affidavits and proposed warrants. *Dunn*, 951 S.W.2d at 479. The magistrate determined probable cause existed for all the warrants, including Dunn's arrest warrant, and signed nineteen of the twenty pages, inadvertently failing to sign Dunn's arrest warrant. *Id.* Police arrested Dunn, performed a search incident to his arrest, and obtained a confession from Dunn. *Id.* The magistrate's omission was noticed and remedied hours after Dunn was taken into custody. *Id.*

Just as probable cause is not an issue in this case, probable cause was not at issue in *Dunn*.[3] Instead, Dunn, arguing that the statement he made to police following his arrest was inadmissible under Article

38.23(a), challenged whether the arrest warrant ever *issued* when there was no compliance with Article 15.02(3)'s requirement that a magistrate sign an arrest warrant. *See* TEX.CODE CRIM. PROC. ANN. art. 15.02(3) (Vernon 2005). That is, Dunn argued, the magistrate's failure to sign the arrest warrant page meant that no arrest warrant ever issued and that the subsequent statement was illegally obtained. *See Dunn*, 951 S.W.2d at 478–79.

Despite the fact that Dunn's arrest warrant did not comply with Article 15.02's requirements—since there was no signature on it—the Texas Court of Criminal Appeals ruled that Article 38.23's good-faith exception allowed the technically defective warrant to support admission of Dunn's custodial statement. *See id.* at 479. There the record supported the conclusion that the officer acted in good faith reliance on the Dunn warrant, which had been issued was based on probable cause. *Id.* The *Dunn* court wrote that such a situation was tailor-made for the good-faith exception:

> This appears to be exactly the type of situation intended to be covered by article 38.23(b). Evidence obtained by a police officer acting in good faith reliance upon a warrant based upon a magistrate's determination of probable cause should not be rendered inadmissible due to a defect found in the warrant subsequent to its execution.

*Id.*

*Dunn*, we think, controls the disposition of this case and directs us to uphold

2. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005); *see Polk v. State*, 738 S.W.2d 274, 276 (Tex.Crim.App.1987).

3. We note this fact in recognition of authority that characterizes Article 38.23(b)'s good-faith exception as more limited than the federal constitutional good-faith exception to the exclusionary rule. *See Curry*, 808 S.W.2d at 482 (reiterating that "Art. 38.23(b) requires a finding of probable cause, while the exception enunciated in [*United States v. Leon*, 468 U.S. 897, 922–24, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)] appears more flexible in allowing a good faith exception if the officer's belief in probable cause is reasonable."). Since probable cause is not challenged in this case, we need not apply the distinction here.

the trial court's ruling on Cole's motion to suppress.[4] Given that Officer Murray witnessed Judge Hadaway sign both documents and that the search warrant, on its face, appears to meet the statutory requirements, the record reasonably supports the conclusion that the officers executing the search warrant acted in objective good faith reliance on the warrant issued by Hadaway based on probable cause. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(b).

We are to uphold the trial court's decision if reasonably supported by the record and if correct on any theory of law applicable to the case. *See Estrada*, 154 S.W.3d at 607. On that basis, we uphold the denial of Cole's motion to suppress based on the application of the statutory good-faith exception provided by Article 38.23 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(b).

Accordingly, we affirm the trial court's judgment.

---

4. We note, too, that our sister court in Corpus Christi has suggested that, on the facts before us, a good-faith exception would apply. In *Miller*, the case on which Cole relies, the good-faith exception was not applied since the completely unsigned search warrant in *Miller* was so facially deficient. The *Miller* court addressed the constitutional good-faith exception as explained in *Leon*, 468 U.S. at 922–24, 104 S.Ct. 3405. *See Miller*, 703 S.W.2d at

354. Here, however, we have a search warrant which is not "so facially deficient." In fact, Cole's contention centers on the concept of the capacity in which Hadaway signed the search warrant, a concept not as apparent on the face of the search warrant as the total absence of a signature. The search warrant here was signed unlike the search warrant in *Miller*. So, from *Miller*, we find support for our disposition, contrary to Cole's position.